**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL NO. 1:14CV12-RJC-DSC**

| | |
|---|---|
| **GEORGE BRENT MELTON,** ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND RECOMMENDATION** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Commissioner of Social** ) | |
| **Security Administration,** ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #9) and "Memorandum ... in Support ..." (document #10), both filed June 20, 2014, and Defendant's "Motion for Summary Judgment" (document #11) and "Memorandum in Support ..." (document #12), both filed August 19, 2014. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be denied; that Defendant's Motion for Summary Judgment be granted; and that the Commissioner's decision be affirmed.

---

[1] Pursuant to the Text-Only Social Security Scheduling Order entered on April 21, 2014, this matter is ripe upon the filing of Defendant's Motion and Memorandum. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

1

# I. PROCEDURAL HISTORY

The procedural history is not in dispute. On September 7, 2010, Plaintiff filed an application for a period of disability and Social Security Disability Insurance Benefits ("DIB") alleging that he became disabled on December 31, 2007. (Tr. 15, 119-27). The application was denied initially and upon reconsideration. (Tr. 15, 115-16). Plaintiff requested a hearing which was held on June 5, 2012. (Tr. 27, 54-80).

On July 26, 2012, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 12-27). The ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 17). The ALJ also found that Plaintiff suffered from bipolar disorder II, post traumatic stress disorder, and tobacco use disorder, which were severe impairments within the meaning of the regulations (Tr. 17-18), but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 18-21). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[2] to perform a full range of work at all functional levels limited to simple, routine, repetitive tasks; occasional contact with the public; no sophisticated transactions; no more than frequent interactions with co-workers; and no pace-oriented positions (Tr. 21-25). The ALJ found that Plaintiff could not perform his past relevant work.

The ALJ shifted the burden to the Secretary to show the existence of other jobs in the national economy that Plaintiff could perform. In response to a hypothetical that factored in the

---

[2]The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

above limitations, the Vocational Expert ('V.E.") identified jobs (handpackagers (non-production), order filler, and industrial cleaner) that Plaintiff could perform. The V.E. stated that 10,800 of those jobs existed in North Carolina. (Tr. 26-27).

Based upon this testimony, the ALJ found that there were a significant number of jobs in the regional and national economy that Plaintiff could perform. (Tr. 25-27). Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27).

On November 14, 2013, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-6).

Plaintiff filed the present action on January 16, 2014. He assigns error to the ALJ's evaluations of his RFC, Dr. Karen Marcus' consultative psychological opinion, and his credibility. See Plaintiff's "Memorandum … in Support ..." at 1-2 (document #10). As a result of these errors, Plaintiff also alleges that the ALJ's step five analysis was flawed. Id. The parties' cross-Motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v.

Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether Plaintiff became disabled[3] as that term of art is defined for Social Security purposes. Plaintiff argues that the ALJ erred in assessing his RFC. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In making that assessment, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR96-8p at *2. However, it is the claimant's burden to establish his RFC by demonstrating how those impairments impact his functioning. See 20 C.F.R. §§404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); Plummer v. Astrue, No. 5:11-cv-00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). The ALJ's RFC determination here is supported by substantial evidence including Plaintiff's testimony, medical records and treatment history.

Plaintiff argues that the ALJ failed to give adequate weight to the consultative opinion of Dr. Karen Marcus and the treating opinion of nurse practitioner Pamela Mumby. The Fourth Circuit has held that a treating physician's opinion need not be accorded controlling weight.

---

[3]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

Dr. Marcus evaluated Plaintiff on November 9, 2011. She administered the Wechsler Adult Intelligence Scale-Fourth Edition, Minnesota Multiphasic Personality Inventory-2 (MMPI-2), Test of Memory Malingering, Miller Forensic Assessment of Symptoms test, House-Tree-Person test, Beck Depression Inventory, and the Beck Anxiety Inventory. She also reviewed available records provided by counsel and conducted a clinical interview. (Tr. 392). Dr. Marcus diagnosed Plaintiff with Bipolar Disorder, PTSD, and undifferentiated somatization disorder. She assigned Plaintiff a Global Assessment Functioning ("GAF") Score of 47-50.[4]

On March 16, 2011, Ms. Mumby noted that she had been treating Plaintiff monthly since October 2010. T 341. She also noted that Plaintiff had diagnoses of Bipolar II disorder, PTSD, alcohol dependence in remission, tobacco use disorder, and a GAF of 50. (Tr. 341). Ms. Mumby opined that Plaintiff would have difficulty working with others and coping with daily stressors.

---

[4] A GAF score of 41-50 indicates an individual has "[s]erious symptoms . . . [o]r any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th ed. 2000).

6

The ALJ discounted those opinions because they were "heavy on symptoms" that Plaintiff "never mentioned in therapy." (Tr. 25). The ALJ's determination was supported by substantial evidence. The ALJ correctly noted that Plaintiff's medical records did not support limitations as severe as those suggested in these opinions. As of August 30, 2010, Plaintiff was still grappling with severe alcoholism and admissions for detox. (Tr. 206-208). When he was released from his fourth detox, it was reported that Plaintiff was making very good efforts and his prognosis appeared favorable. (Tr. 206, 208). Plaintiff continued with Veteran's Administration (VA) clinical assistance, and by October 2010, he was reported to be less depressed.[5]

In February 2011, Plaintiff was taking his medication and his mood was stable. His anxiety had worsened. (Tr. 285). After his last documented alcohol abuse in May 2011, when he drank a twelve- pack of beer in one weekend (Tr. 367), Plaintiff showed signs of recovery from his depression and anxiety. In September 2011, he was receiving lifestyle counseling and schedules for eating and sleeping. (Tr. 449). On October 17, 2011, he reported that he was doing well on his current medications and his anxiety was under control. (Tr. 433). Plaintiff's clinician reported that he was stable, his anxiety was under control, he was sleeping

---

[5] A claimant cannot be found disabled if drugs or alcohol are deemed to be contributing factors. See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535. In this case, the ALJ found that Plaintiff had been in recovery long enough to assess his condition independently from his alcoholism. Thus the question is whether following treatment for his alcoholism, Plaintiff had recovered sufficiently to perform within the limits of the ALJ's RFC determination. See 42 U.S.C. § 423(d)(1)(A) (An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months.").

7

well, remained substance abuse free, and stopped smoking four months prior. (Tr. 463). Plaintiff continued to live with his girlfriend and was repairing his relationship with his son. (Tr. 463). Plaintiff stated that since he had been denied disability, he wanted to work. He only expressed concerns about working with a boss and interacting with others. (Tr. 433).

On September 21, 2012, Plaintiff presented as neat, clean, cooperative, and calm. There were no obvious abnormal movements and his speech was normal. (Tr. 535). While it was noted that he was dysphoric and anxious, his thought content was organized without obvious delusions or paranoia. He maintained attention and focus and had no obvious deficits in short or long-term memory. (Tr. 535).

In short, the clinical records showed that Plaintiff was learning to cope with his impairments. Considering Plaintiff's anxiety, the ALJ limited him to simple repetitive tasks with no pace-oriented type work. Plaintiff was also limited to only occasional contact with the public. The ALJ fully accommodated Plaintiff's limitations while discounting the opinions finding him disabled.

Plaintiff also argues that the ALJ's assessment of his credibility is not supported by substantial evidence. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (citing 20 C.F.R. § 416.929(b); and § 404.1529(b)); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the

ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." Id. at 595, citing 20 C.F.R. § 416.929(c)(1); and § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

> not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The ALJ is not required to discuss every factor enumerated in 20 C.F.R. §§ 404.1529(c) and 416.929(c). Rather, the decision must contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The record contains evidence of Plaintiff's bipolar disorder II, post traumatic stress disorder, and tobacco use disorder – which could be expected to produce some of the symptoms he claimed. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record. That determination is supported by substantial evidence.

As noted above, the record shows that Plaintiff was doing well in recovery from alcoholism. At the beginning of his recovery in November 2010, Plaintiff reported that he

stopped one of his medications because of drowsiness. (Tr. 331). Otherwise he appears to have tolerated his medications.

The ALJ focused on Plaintiff's ability to function following his alcohol recovery and receipt of proper treatment. The record in these later periods supports the determination that Plaintiff's overall functioning had improved. Despite Plaintiff's past difficulties, the record indicates that he was able to function, albeit with the non-exertional limitations the ALJ included in his RFC. The record also shows that Plaintiff wanted to work and had worked for several years. (Tr. 393).

Finally, Plaintiff assigns error to the ALJ's analysis at step five, contending that the hypothetical posed to the V.E. reflected the errors discussed above. Having found the RFC to be properly supported by the evidence, this assignment of error fails as well. Fisher v. Barnhart, 181F. App'x 359, 364 (4th Cir. 2006) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence (quoting Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)). Since the ALJ's RFC finding is supported by substantial evidence and was incorporated into the hypothetical posed to the V.E., the ALJ properly relied on this testimony in finding that Plaintiff was not disabled. (Tr. 494-95).

Although the medical records establish that Plaintiff experienced symptoms to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to

whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and her ultimate determination that Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #9) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #11) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells,

109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED**.

Signed: August 25, 2014

David S. Cayer
United States Magistrate Judge